EARL K. BURTIS, APPELLEE, V. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, APPELLANT.

FILED MARCH 10, 1933. No. 28410.

*Jesse L. Root, Byron Clark, J. W. Weingarten* and *A. G. Abbott,* for appellant.

*B. J. Cunningham* and *Paul B. Newell, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

PAINE, J.

This is an action to recover $1,039.47, alleged damages on account of negligent delay in transportation of cattle from Spokane, Washington, to Grand Island, Nebraska, which delay required the steers to be held over until the next regular sale, one week later. A judgment for $433 was entered upon the verdict which the jury returned.

The plaintiff, a resident of Kearney, had been engaged in the live stock business for 35 years, handling some-

thing like 50 carloads a year, and was in Spokane to purchase feeder steers to sell on the Grand Island live stock market. He made inquiry of the agent of the Northern Pacific about the time required for shipment. He told the agent that he wanted to be on the Grand Island market on Monday, July 1, 1929, and that Monday of each week was the only day the market was held, and the agent examined the schedules and told him that the shipment would take five days' time, but that five and a half days would be the outside. Thereupon, the plaintiff went out and bought 47 steers on the market. They were loaded and shipped at 11 o'clock, Tuesday, June 25, 1929, the plaintiff going with the shipment.

The defendant attempts to show in its brief that there was only one scheduled through freight train daily from Spokane eastward to Billings over the Northern Pacific, and but one scheduled through freight train from Billings over the Burlington to Grand Island, and that, transporting this shipment of stock only upon said scheduled through freight train, and allowing for the required stops for feed, water, and a rest of five hours, this shipment would have reached Grand Island at 12:30 p. m., July 1, 1929, and not at 11 p. m., Sunday, June 30, as the plaintiff testifies the initial agent promised, for which promise, if made, the carrier can in no wise be held under the law. However, it is shown by the evidence of the plaintiff that, if the steers had arrived at the regularly scheduled time of 12:30 p. m., July 1, they could have been sold on the market that day, for the sale was continued until late that afternoon. The shipment actually arrived in Grand Island that night at 10:35 p. m., even though, after being held in Helena for some 26 hours, it was shipped out on an extra train at 9:10 a. m., June 27, instead of being held until the regular through freight leaving Helena according to schedule, at 6:15 p. m.

All of the facts of the delays in this shipment at various points were properly submitted to the jury, together with all of the defenses therefor, and the jury,

under proper instructions, found that there was a negligent delay in the shipment.

1. It may be admitted that the petition lacks much of charging, in definite and concise language, certain detailed facts going to make up the negligence in the delay of this shipment, but charges the same generally, and the plaintiff introduced considerable evidence in reference thereto, which evidence the defendant attempted to meet, and this question of negligent delay was submitted to the jury by the trial court in its instructions. The gist of the action is the alleged negligence of the carrier in failing to forward said steers and deliver them according to their published schedules.

The trial court, in instruction No. 7, told the jury: "A railroad company is not an insurer of the arrival of its trains on schedule time in the transportation of live stock; but, when there is a material delay in the delivery of stock, the company must, to exonerate itself from liability, show that the delay arose from some cause other than its own negligence." This is clearly in line with the case of *Jeffries v. Chicago, B. & Q. R. Co.*, 88 Neb. 268, in which it was held that a delay of 24 hours at a station is an unnecessary delay, unless it is explained and excused by something which the law recognizes as sufficient, and it is further held in this case that a common carrier of live stock cannot, by contract with the shipper, relieve itself from liability for injury or loss resulting from its own negligence. See *Denman v. Chicago, B. & Q. R. Co.*, 52 Neb. 140; *Union P. R. Co. v. Nelson*, 76 Neb. 72.

In *McElwain v. Union P. R. Co.*, 101 Neb. 484, 1 A. L. R. 533, this court held: "Where there is proof that an unreasonable time was consumed in transporting the shipment, the burden is on the carrier to prove that the delay was not caused by its negligence, though the owner of the live stock accompanied the shipment." See *Panhandle & S. F. R. Co. v. Bell*, 189 S. W. (Tex. Civ. App.) 1097.

In *Cohn v. Chicago & N. W. R. Co.*, 100 Neb. 7, it was

held: "To entitle the plaintiff to recover for negligent delay in transporting an interstate shipment of live stock, it is necessary to introduce some competent evidence tending to show the length of time ordinarily required to transport the shipment from the place where it was received to the point of delivery, and that a longer time was actually consumed than was necessary for that purpose."

2. A common carrier is not liable for loss or depreciation in value of live stock due to the time consumed in the transportation thereof, if the stock is transported within the time provided by its regular schedules. *Payne v. Chicago, M. & St. P. R. Co.*, 99 Neb. 699; *Rose v. Chicago & N. W. R. Co.*, 111 Neb. 783.

It is insisted that the pleadings do not adequately cover the issues presented in the briefs and evidence. This court has held: "Where the record on appeal to this court clearly shows that the case was tried and determined in the court below upon a certain theory, it will ordinarily be considered and decided in this court upon the same theory, even though such theory may be somewhat at variance with the pleadings." *Hunt v. Chicago, B. & Q. R. Co.*, 95 Neb. 746.

The verdict returned by the jury is attacked by the defendant carrier as not sustained by the evidence. There appears to be no conflict in the evidence upon the feed bill of $113 for feed during the week while the steers were being held for the next sale, and O. I. Blain, office manager of the live stock company, testified that the weight of the 47 steers was 37,300 pounds, and that the market was 75 cents less per hundred pounds on July 8 than it was on July 1 on this class of stockers, which makes a difference of $279.75. This leaves a difference of $40.25, which the defendant carrier insists is not supported by the evidence. The mistake appears to have occurred from an error of the jury in computing too much interest. It appears that in the petition the plaintiff asked interest at 7 per cent. from the date of the filing

of the petition, to wit, February 19, 1931, while in instruction No. 16 the trial court instructed the jury, in case they found for the plaintiff, to allow him interest at 7 per cent. from the date of the filing of his claim with the defendant carrier, which was upon August 8, 1929. This conflict in computing the interest is an error which can be corrected by the trial judge, and, finding no other error therein, the judgment of the district court is affirmed, except as to the item of interest, and the same is remanded to the district court to enter a judgment for the correct amount, including interest.

AFFIRMED AS MODIFIED.